The fourth case on our docket this morning is 24-10699 Garcia v. Fuentes, Restaurant Management Services, Inc. Ms. Sines. Good morning, Your Honors. My name is Christiana Sines. I'm with the law firm Greenberg-Trari, and we represent the defendant's appellants in this case, who I will refer to as Gloria's this morning for the sake of simplicity. This appeal asks whether Gloria's waived its right to arbitrate by substantially invoking the judicial process. Through four acts that the Fifth Circuit has already held, do not substantially invoke the judicial process. The lower court ruled contrary to this, and in so doing, created a presumption that Morgan v. Sundance does not permit, and essentially an automatic finding that a party that doesn't know about its right to arbitrate when it files a joint status report is presumed to have waived its right to arbitrate. This court should reverse. First, I'd like to talk about the four specific acts that the lower court relied on in holding that Gloria's had substantially invoked the judicial process. Number one is filing an answer and defending itself in litigation for about five months. Now, this court's seminal case law on waiver through litigation conduct holds that filing an answer does not waive the right to arbitrate, including Tenneco Resins, Inc. v. Davey International and Walker v. J.C. Bradford & Company. In both of those cases, the defendant had filed an answer and taken other action in court, and the Fifth Circuit held that they had not substantially invoked the judicial process. Filing an answer does not substantially invoke the judicial process, even if the answer itself does not mention arbitration. That is what this court held in Pacheco v. PCM Construction Services. And finally, in terms of the time period, these three cases that I just cited involve substantially longer time periods, and I'm talking about the period between filing the complaint on the one hand and filing the motion to compel arbitration on the other. In this case, that was about a five-month period. In Tenneco, it was approximately an eight-month period, and in Walker and Pacheco, it was a 13-month period, which is more than two times the amount of time we're talking about here. So that's Act I. The second act that the lower court relied on in finding substantial invocation of the judicial process is participating in preliminary written discovery. The cases I just cited to you are on point here as well. In both Tenneco, Resins, and Walker, not only had the defendant filed an answer and participated in the judicial process for longer than five months, they had also served interrogatories and requests for production, written discovery. And in fact, in Tenneco, Resins, the defendant had done quite a bit more. The plaintiff had noticed a deposition to take place here in Texas, and the defendant had filed a motion for a protective order and said the deposition should take place in Germany, and the court granted that motion. And the defendant had also filed an opposition about whether the depositions had to produce more witnesses and comply with the Hague Convention. All of that was before the court in terms of discovery, and the Fifth Circuit said that it and other courts have allowed such actions and considerably more before finding a party has substantially invoked the judicial process. So that brings us to action number three. Action number three was mediating. Now, first, let me ask you, as a matter of common sense, how can privately mediating a matter out of court substantially invoke the judicial process? The whole point of private mediation is that the parties do not want the court to decide the issue. They want to resolve it out of court. But second, and perhaps more importantly, this court has already addressed out-of-court settlement efforts and said that they do not substantially invoke the judicial process. And that was in Walker. It expressly addressed out-of-court settlement efforts and said that doesn't substantially invoke. It wouldn't make sense to hold otherwise. We want to encourage out-of-court efforts at settlement. So that leaves us with action four, which is filing the joint status report. Filing a joint status report does not substantially invoke the judicial process. In Pacheco, the defendant filed a joint status report, and it didn't mention arbitration. And this court still held that the defendant had not substantially invoked the judicial process. Pacheco is notable because the court decided that case completely on whether the defendant had substantially invoked. It said we're not even going to address prejudice. And this goes to a through line in all of these cases about waiver through litigation conduct. Parties do not lose their right to arbitrate by taking actions that are consistent with the orderly participation in a lawsuit, actions that if a party declined to take them, the court might order them to take, such as filing a joint status report, responding to a complaint. If a court enters an order, a district court enters an order and says, okay, parties, we're going to have a Rule 16 conference. I want to see your 26F report by this date. Neither party can say, no, thank you. I'm not going to file the joint status report. That would disrupt the litigation. You can waive the jury trial, though, can't you? In a status report, you say, I want a non-jury trial. Yes, but you have to file the status report, right? Right. And once you say that, the judge can say, that's it. You said you didn't want a jury, you can't change your mind. Right? So, yes. And you're going to the issue of what was said in the joint status report, which I submit you don't have to reach. Because the question is just whether you file the joint status report. But, to your point, the joint status report did not say, Gloria's is aware of its right to arbitrate and it is going to waive that right to arbitrate. The joint status report did not say, Gloria's isn't sure if it has a right to arbitrate, but either way it's going to waive it. Why wouldn't we have to reach what the joint status report said? I don't understand that. Because filing the joint status report, well, here's the issue. In these cases, when a party loses its right to arbitrate, it is when the party asks the court to decide the merits of the dispute. It is invoking the judicial process to resolve the dispute. When the party files a motion for summary judgment, or when the party files a motion to dismiss with prejudice, it's asking the court, you resolve this dispute. In filing the joint status report, Gloria's did not ask the court to resolve the dispute. The joint status report asked, are the parties considering mediation at this time? Mediation or arbitration. And Gloria's responded and said, no, the parties aren't considering arbitration at this time, because we're not aware of an arbitration agreement. But we are planning to do an early mediation. So that should end the inquiry. This case is very much like one that was before Justice Willett last year. It was Pumphrey v. Triad Life Sciences. And in that case, the defendant had filed a motion to dismiss. But the motion to dismiss didn't ask for dismissal with prejudice. It was a motion to dismiss that said, the facts that are pled in the complaint don't state a legal claim for relief. And so this court held, well, you're not invoking the judicial process to resolve the merits of the dispute. You're invoking the judicial process to understand the dispute in the first place. And so that's not substantially invoking the judicial process in terms of waiver. And it said, we're going to end the inquiry there. The appellant in Pumphrey had explained on appeal, we didn't know when we filed the motion to dismiss that there was an arbitration agreement. And the Fifth Circuit said, well, we're not even going to reach that issue. We don't have to address that issue, because the action of filing the motion to dismiss didn't ask the court to resolve the merits of the dispute, and that's enough. From that, we can tell the party didn't substantially invoke the judicial process. So this case is like Pumphrey, and the inquiry should end there. However, to the extent that this court reaches the issue of what Gloria's knew and when, it should hold that the lower court erred in finding Gloria's knew or should have known about the arbitration agreement when it filed the joint status report. The lower court reached that conclusion by throwing out two precepts of waiver through litigation conduct in this circuit that should not be thrown out. The first is that the party asserting waiver bears the burden of proving waiver, and the second is that there is a presumption against a finding of waiver. The lower court essentially misinterpreted the Supreme Court's case, Morgan v. Sundance. Morgan simply holds that an arbitration agreement and, crucially, any defenses to an arbitration agreement should be on the same footing as any other agreement and the defenses to any other agreement. And here, if you play that out, that means that the presumption against a finding of waiver and the fact that the party asserting waiver has to prove it, they survive. That is because in contract law generally, outside of the context of arbitration, if a party is asserting that another party waived its right to arbitrate, the burden is on the party asserting waiver. In addition, that's a very high burden. I think that the Supreme Court of Texas has a very on-point case. It's Lalonde v. Gosnell, and there's a footnote that explains why this sort of presumption against a finding of waiver holds true in non-arbitration context. Lalonde was not an arbitration case. It had nothing to do with arbitration, but it went to great lengths to explain the standard for waiver through litigation conduct outside of the context of arbitration. And it said to prove waiver, a party has to prove the intentional relinquishment of a known right by a preponderance of the evidence. That's a really high standard. You're proving intent, and you're proving knowledge, and you're proving it by a preponderance of the evidence. And so in a close case, the party asserting waiver is going to lose. There is, in that regard, a presumption against a finding of waiver. Well, let's change the facts a little bit and test that theory. Let's suppose you'd gone to trial and you'd lost, and then you said, oh, my gosh, we found this last night in our file. We didn't know about it. We want to arbitrate now. So those are not the facts of the case. I know they're not the facts, but you said it's got to be a known right, and you have to intentionally waive it. Here, let's say the client didn't find the document, they didn't know they had the right to arbitrate, but they found it after trial. At that point, you would have substantially invoked the judicial process because you would have done more than that. What's that got to do with your known intentional waiver? It seems to me they're two different concepts. I think they are two different but related concepts. And like the Fifth Circuit held in Pumphrey, you don't reach the knowledge part unless or until you find that the party substantially invoked the judicial process. Well, when the district court tells you I want a pretrial report by this day and you've got to have certain things in it, and you don't put those things in it, what happens? The district court wasn't saying you have a deadline to assert arbitration, and if you don't, then you're going to waive it. The district court's report said, are the parties considering arbitration at this time? And your client affirmatively said no. Yes, because it didn't have knowledge of the right to arbitrate. But it was in your files. Well, the record shows that the defendant, Flores, had been using this arbitration agreement in conjunction with a workplace injury policy that they had. And the workplace injury policy and the arbitration agreement were being handed out to employees since back in 2014. In mid-2022, they stopped using that workplace injury policy, but it took some time to implement that, right? This is a company, and so there's a transition period. And the plaintiff started working in October 2022, and so at that time she still got the arbitration agreement and she still got the blank acknowledgment and signed and returned it. And so later, by the time that she files her lawsuit, they're not handing out this arbitration agreement anymore. Well, then get a look at her personnel. That doesn't negate the fact that it was in your personnel files, correct? And as soon as the company saw that and said, okay, wait a second, there's this acknowledgment form. Why did that go to what the company should have known? The question of what the company should have known is not the relevant question here, and that was addressed by this court in Williams v. Cigna Financial Advisors. In that case, the plaintiff had made a similar argument and said, well, it was a removal case. And the plaintiff said the defendant should have known about this arbitration agreement at the time it was an employment case, too. The defendant should have known about this arbitration agreement at the time they removed it. Well, again, you're mixing apples and oranges. It seems to me that the court, you were saying at some point you invoked the judicial process. We're on a spectrum here, it seems to me. After trial, you say, no, that's too late. And the question is, when the court tells you to submit a status report, one of the questions is, are you going to ask for arbitration and you say no? Can you go back on that or not? When have you invoked the process to the point saying, and the court can say, I'm going to hold you to that? When you have used the judicial process to resolve the merits of the dispute. So when you've started to take depositions about the case, when you've filed motions for summary judgment asking the court to resolve the dispute, when you filed a motion to dismiss with prejudice asking the court to resolve the dispute. But at that point in filing the joint status report, they hadn't asked the court to resolve the dispute. They weren't aware.  May it please the court. Good morning, your honors. My name is Drew Herman and I, along with my co-counsel, have the privilege of representing plaintiff Diana Garcia, the appellee in this matter. At the outset of this case, in response to a court-specific question about whether the parties are considering arbitration, the parties clearly and unambiguously represented to the district court that, quote, the parties are not considering arbitration to resolve this litigation, end quote. And although defendants have now stated in their argument that they said that because they were not aware, that is not what the joint status report says. The joint status report goes on to say, quote, and defendants are not aware of any arbitration agreements, end quote. Yet, several months later, despite representing to plaintiff and the court that they were not considering arbitration to resolve this litigation and were not aware of any arbitration agreements, defendants filed a motion to compel plaintiff Garcia to arbitrate her claims pursuant to an unsigned arbitration agreement. Ultimately, the district court denied defendants' motion to compel arbitration, correctly finding defendants waived any right they may have had to compel plaintiff to arbitrate her claims. Therefore, the sole issue on appeal is whether defendants' explicit statement that they were not considering arbitration to resolve this litigation was a waiver of their right to arbitrate. Could the district court have done that? Could it have a standing order that says, when you file your answer, I want you to also tell me if you're aware of an arbitration agreement, and if so, you're going to seek arbitration? Could they do it early on in the litigation, and if you say no, you've waived it? Yes, Your Honor, and that goes with the court's ability to manage their own docket. In fact, courts do things like that all the time with pretrial orders, for instance. You have to make certain objections within your pretrial order or they're waived, and that just goes to the court's management of its own docket. Was there anything that indicated that if you said in the pretrial order, we're not aware of an arbitration agreement, we don't currently intend to invoke arbitration, that this is going to be binding on you, this is kind of it, you must declare now? Was there anything that suggested that? I think the fact that it's being asked by the court and the parties are stating it in open court not only to each other but to the court, I think that that is critical. And, in fact, joint status reports are used to narrow the claims, and, in fact, this court has held in other opinions that where a party leaves in the section about claims, which is a requirement under 26F, you have to set forth your claims and defenses, that if you leave things out that you cannot pursue those. And so the whole purpose of a joint status report is to narrow the dispute and so the court can manage its own docket. How much work is the joint report doing? If there were no joint report, would you still be hammering on waiver? No, Your Honor. So that's the critical? So the explicit representation in the joint report is kind of the linchpin of what happened here. And if we hold there is no waiver, then what's your strongest argument for affirmative? Yeah, Your Honor, so that goes to the question about if there's no waiver, is it because there was not an explicit statement, which we contend that defendants cannot seriously dispute that their statement to plaintiff and the court that they're not considering arbitration. That is the quintessential overt act that evinces a desire to litigate rather than arbitrate. In fact, in Nicholas v. KBR, this court said, the clearest example of waiver would be a party saying so in open court. In other words, defendants unequivocal statement to the court that they were not considering arbitration to resolve this litigation is the epitome of what this court has said is the clearest, most explicit example of waiver. I thought the question was, if we say there isn't waiver, what's your strongest argument? Why do you still win? If there isn't waiver, the only issue on appeal is waiver. So the only issue that the court has affirmatively ruled on is the issue of waiver. And really what defendants, the test that they're advocating for, is the test that this court uses to look at implied waiver, to substantially invoke the judicial process, because you have to look at the party's actions to infer or imply whether they waived arbitration. But here, we don't have to look at their actions because they said so. They made it known. In addition, defendants also pivot to instead also taking issue with the district court's finding that defendants had knowledge of the agreement. The district court found defendants had knowledge of the agreement based on defendants' own declarations, which state, one, the agreement was a business record and had been in defendants' possession, and two, the agreement was part of defendants' regular onboarding process across all 22 of defendants' restaurant locations since at least 2014. Despite the fact their own evidence shows otherwise, defendants continue to offer the unsupported assertion that they lacked any knowledge of the agreement to arbitrate until November of 2023. However, defendants cannot have it both ways. If defendants were aware of the agreement to arbitrate, as the district court found they were, then they waived arbitration. On the other hand, if defendants did not have knowledge of the agreement, then there is no agreement to arbitrate. Let me explain. Because defendants are seeking to compel plaintiffs to arbitrate pursuant to an unsigned agreement, defendants must establish that plaintiffs saw the agreement and accepted it. To do so, defendants are required to establish that they provided plaintiff with the agreement and that she continued working after defendants provided it to her. Although defendants may point to an acknowledgment form that plaintiffs signed, two Texas appellate courts have held, when looking at nearly identical documents, that the acknowledgment form has nothing to do with the unsigned mutual agreement to arbitrate. Instead, the acknowledgment is acknowledging receipt of an occupational benefits plan, a document that has nothing to do with the unsigned arbitration agreement. In other words, defendants cannot claim they were not aware of the agreement in September of 2023 when the joint status report was filed, and at the same time argue that they entered into a binding agreement with plaintiff by providing it to her at the start of plaintiff's employment a year earlier in October of 2022. Simply put, if defendants do not have knowledge of the agreement, then they never had an agreement with plaintiff in the first place. How is today's case different than the facts in Tristar? In Tristar, the company had the arbitration agreement. Yeah, so Tristar is distinguishable in several ways. One, in Tristar, the company was being wound down, and none of the employees who worked at Tristar when the plaintiff worked there were still employed. And so no one who had been part of the arbitration process at Tristar were even employed. What other kind of points of distinction are there? Yeah, so also, and I'm losing my train of thought. Oh, in Tristar, the agreement was also signed. So defendants didn't have to affirmatively say that they had knowledge of it. The fact that it was signed was sufficient to bind the plaintiff to the agreement. There was no need for them to say whether or not they were aware of it. Your friend on the other side. Yeah, there was no downsizing or corporate restructuring like in Tristar, but there was a change in corporate policy that ought to excuse their lack of knowledge. Your Honor, the individual who purportedly gave this agreement to the plaintiff, which the plaintiffs have disputed, Plaintiff Garcia has affirmatively stated she never received this unsigned agreement, but the person who provided a declaration is the people who said that they gave it to her. So he's still employed. He has been, and to my knowledge to this day, is still employed there. Ultimately, defendants knew. Indeed, defendants argued that they contracted for the right to arbitrate. There is simply nothing in the record to suggest that the district court committed clear error by finding defendants' own evidence established their knowledge of the agreement. According to defendants, the agreement had been in their possession and was a standard component of their new hire onboarding process across all 22 of defendants' restaurant locations since at least 2014. Small podium. Finally, I want to make a note about defendants' citation to a declaration from defense counsel. This declaration merely states that the agreement was located in November of 2023. Critically, defense counsel's declaration does not say defendants were unaware of the agreement or that defendants themselves were not aware of the agreement. Like defendants, defense counsel also cannot say defendants did not have knowledge of the agreement because that would be tantamount to admitting that there was no agreement to arbitrate in the first place. Defendants simply cannot have it both ways. They cannot argue that they were unaware of the agreement and at the same time argue that the agreement had been in their possession and had been part of their new hire onboarding process since at least 2014. If there are no further questions, we would ask this court to affirm the district court's order denying defendants' motion to compel arbitration. Thank you. Your Honor, I want to begin first by noting the concession that if the joint status report is not held to be a waiver, then there is no waiver here. That's a big concession because the lower court held there were four grounds for waiver. And then, secondly, I want to go back to the purpose of a Rule 26-F report or a joint report. The purpose is scheduling. It's the orderly management of a litigation. It sets the deadlines that are then going to decide the party's rights and when they have to assert things. For example, it sets a motion for summary judgment deadline. The requirement that they file the joint status report, it didn't say, as Your Honor, Justice Richmond said, it didn't say, and let us know if there's an arbitration agreement. Otherwise, you're going to waive the right to arbitrate. This was one of 20-plus issues that the parties touched upon so that the district court could set a scheduling order for this case. That's very different. Talking to the court or telling the court, invoking the judicial process for the orderly management of a case is not the same thing as invoking the judicial process to decide the merits of the dispute. And finally, I want to go back to knowledge. A finding that Gloria's knew, first of all, on the knowledge piece, in listening to my co-counsel's arguments, you can't help but tell that the burden was flicked, right? It's Gloria's didn't prove why they didn't know. Gloria's didn't prove that they didn't know. Gloria's didn't prove this. But the burden of proving knowledge in an intent to relinquish a right. In the case of the knowledge of the employee, you said, yes, I gave it to the plaintiff, imputed to that employee's employer. It's a manager, the restaurant manager. Gloria's has 22 locations, and so it's going to take time. What law says that means it's not imputed? The knowledge of a low-level manager is not imputed to the corporation as a whole. But even if it were, it took time. So my opposing counsel raises this issue of the acknowledgment, right? The arbitration agreement wasn't signed, but the acknowledgment was signed. Well, the acknowledgment, and this is in the record, multiple places, it says, I acknowledge that there's a mandatory company policy requiring certain claims to be arbitrated, and I am accepting and agreeing to comply with these arbitration requirements. But then the company had to go back and say, okay, but was this arbitration agreement provided? Because in mid-2022, we stopped providing the summary. Why would you ask her to sign something about arbitration if you didn't give her an agreement to arbitrate? They didn't, but we had to be sure that she also got the arbitration agreement as well. And so in talking with the manager, then the company knows, okay, she got the arbitration as well. And this could have happened the day the lawsuit was filed, right? I mean, again, going back to imputed knowledge, what case is that manager's knowledge about the arbitration agreement, along with the signed acknowledgment, is not imputed to the company? I would go back to TriStar. The TriStar case is on point here because it holds that litigating without knowledge or litigating a dispute in ignorance of the right to arbitrate does not demonstrate a desire to resolve the arbitrable dispute in litigation. And so in TriStar, it was a similar context. It took time for the employer to find. And the alternative, too, is exactly what you're saying, a requirement that a party know on the day a lawsuit is filed that there is an arbitration agreement and a right to arbitrate. That's a standard that's not found in any case. Okay, five months later when the court says, I'm asking you to put in writing, do you intend to arbitrate? It was three months later when they filed the joint status report. And in the interim period they found it, a couple months later they moved to compel arbitration. And so this is in the record. The evidence shows that they had been providing the arbitration agreement with that policy on the workplace injury report. This is in the record at 975. It shows that Gloria stopped using the workplace insurance policy in mid-2022, but in some places was continuing to distribute the arbitration agreement. This is in the record at 998. And then it shows that the plaintiff started working in October 2022 during this transition period, in the record at 155. This case is indistinguishable from TriStar. And some, quickly, the joint status report does not say that Glorias wants the court to resolve the merits of this case rather than an arbitrator. It says that Glorias is not considering arbitration because it's not aware of an agreement to arbitrate. Glorias asks that this court reverse the lower court's decision, hold Glorias did not waive its right to arbitrate, and order the plaintiff to proceed with her claim in arbitration. Thank you. Thank you, counsel. We have your argument. That will conclude the argument.